FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 04, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BETH ANN N., | NO:  2:22-CV-131-RMP |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Beth Ann N.,[1] ECF No. 15, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 18.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) of the Commissioner's partial denial of her claim for Social Security Income ("SSI") under Title XVI of the Social Security Act (the "Act").  *See* ECF No. 15 at 1–2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and middle and last initials.

Having considered the parties' motions[2], the administrative record, and the applicable law, the Court is fully informed.  For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Judgment and directs entry of judgment in favor of the Commissioner.

## BACKGROUND

***General Context***

Plaintiff applied for SSI on approximately August 24, 2017, alleging an onset date of June 24, 2017.  Administrative Record ("AR")[3] 323, 1185, 1482.  Plaintiff was 51 years old on the alleged disability onset date and asserted that she was unable to work due to respiratory bronchial interstitial disease and coronary artery disease.  AR 347, 354.  On September 18, 2018, the Administrative Law Judge ("ALJ") issued an unfavorable decision, and Plaintiff sought review by this Court.  *See* AR 1.

While Plaintiff's district court case was pending, she filed a second SSI application on approximately December 18, 2018, alleging onset on December 1, 2018.  AR 1321, 1338.  On April 17, 2019, Washington State Disability

---

[2] The Court notes that Plaintiff did not file any reply.  Failure to comply with the filing deadlines set by Local Civil Rule 7 "may be deemed consent to the entry of an order adverse to the party who violates these rules."  LCivR7(e); *see also* Fed. R. Civ. P. 56(e) ("If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party.").

[3] The Administrative Record is filed at ECF No. 10.

Determination Services ("DDS") found Plaintiff disabled as of September 19, 2018. AR 1323–40.

On August 29, 2019, this Court granted the parties' stipulated Motion for Remand, and reversed and remanded the matter for further proceedings. AR 1309. Pursuant to the parties' stipulation, this Court directed that an ALJ on remand would: reevaluate, with the assistance of a medical expert, if available, the severity of the claimant's mental impairments; reconsider the medical opinions of record; reconsider the Plaintiff's symptom testimony; reassess the Plaintiff's residual functional capacity; and reassess steps four and five with the assistance of a vocational expert. AR 1311.

On December 18, 2019, the Appeals Council issued its order remanding the case to an ALJ. AR 1320–21. The Appeals Council noted in its order that the April 17, 2019 initial determination finding Plaintiff disabled as of September 19, 2018 "will be subject to reopening and revision if additional development indicates that the conditions for reopening are met." AR 1321.

On November 10, 2021, Plaintiff appeared for a hearing on remand held by ALJ Shumway, by teleconference, from Spokane, Washington. AR 1230–31. Plaintiff was represented attorney Timothy Anderson. AR 1232. The ALJ heard from vocational expert Steve Duchesne and medical expert Laura Hopper. AR 1240–76. ALJ Shumway also heard argument from Plaintiff's counsel regarding the

issue of reopening Plaintiff's December 2018 SSI application.  AR 1234–38.  The ALJ reconvened the telephonic hearing on March 14, 2022, to hear testimony from Plaintiff.  AR 1269.  ALJ Shumway informed Plaintiff and her attorney at the outset of the hearing that he had considered the argument from the November 2021 portion of the hearing, had reviewed Plaintiff attorney's intervening brief on the subject, and anticipated finding that he had good reason to reopen the favorable decision on Plaintiff's December 2018 application.  AR 1271–72.  ALJ Shumway issued a partially favorable decision on June 23, 2021, and the Appeals Council denied review.  AR 1−6, 1185–1200.

### ALJ's Decision

Applying the five-step evaluation process, ALJ Shumway found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since August 24, 2017, the application date.  AR 1189.

**Step two:** Since August 24, 2017, the claimant has had the following severe impairments: chronic obstructive pulmonary disease/interstitial lung disease; right hip, status-post tumor excision; hypertension; lumbar degenerative disc disease; and anxiety disorder.  AR 1189 (citing 20 C.F.R. § 416.920(c)).

**Step three:** The ALJ concluded that, since August 24, 2017, Plaintiff has not had an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).  AR 1189.  In reaching this conclusion, the ALJ considered "all of the listings found in 20 CFR Part 404, Subpart P, Appendix 1, paying particular attention to" listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root); 1.18 (abnormality of a major joint or joints in any extremity), and 3.02 (chronic respiratory disorders).  AR 1189–90.  The ALJ found that "[t]he record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment."  AR 1190.  The ALJ further considered whether Plaintiff's mental impairments are sufficiently severe to meet or equal the criteria of listing 12.06 (anxiety and obsessive-compulsive disorders).  With respect to finding that Plaintiff does not satisfy the paragraph "B" criteria, the ALJ found that Plaintiff is mildly limited in understanding, remembering, or applying information; moderately limited in interacting with others and in concentrating, persisting, or maintaining pace; and markedly limited in adapting or managing oneself.  AR 1190.  The ALJ found that Plaintiff also does not satisfy the paragraph "C" criteria.  AR 1190.

   **Residual Functional Capacity ("RFC"):** The ALJ found that, since August 24, 2017, Plaintiff can perform a full range of light work as defined in 20 CFR

416.967(b) except that Plaintiff: can occasionally perform all postural activities; can have no exposure to pulmonary irritants; is limited to simple, routine, repetitive tasks; can have only occasional, superficial contact with the public, supervisors and coworkers; she needs a routine, predicable work environment with no more than occasional changes; and is likely to be absent from work one day per month, on average. AR 1191. In formulating Plaintiff's RFC, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not fully supported. AR 1191–92.

**Step four:** The ALJ found that, since June 24, 2017, Plaintiff has been unable to perform past relevant work. AR 1196 (citing 20 C.F.R. § 416.965).

**Step five:** The ALJ found that, before the established onset date, Plaintiff was an individual approaching advanced age, but Plaintiff became an individual of advanced age in July 2020. AR 1196 (citing 20 C.F.R. §§ 416.963; 416.964; SSR 82-41). The ALJ found that Plaintiff has a high school education and that, prior to July 14, 2020, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" regardless of whether the claimant has

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 6

transferable job skills.  The ALJ found that beginning on July 14, 2020, Plaintiff has not been able to transfer job skills to other occupations.  AR 1196.

The ALJ further found that before July 14, 2020, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including the following representative occupations: marking clerk (light, unskilled work, with around 130,000 jobs nationally); small products assembler (light, unskilled work with around 300,000 jobs nationally); and office helper (light, unskilled work, with around 14,000 jobs nationally).  AR 1196–97 (citing 20 C.F.R. §§ 416.969 and 416.969a).  The ALJ concluded that beginning on the date that Plaintiff's age category changed in July 2020, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform.  AR 1197 (citing 20 C.F.R. §§ 416.960(c) and 416.966).  Therefore, the ALJ found that Plaintiff had been disabled for purposes of SSI eligibility beginning in July 2020.  AR 1198.

Through counsel, Victoria Chhagan, Plaintiff sought review of the unfavorable portion of the ALJ's decision in this Court.  ECF No. 1.

## LEGAL STANDARD

### *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 7

Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 8

nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### Definition of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 9

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. § 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that he has performed in the past.  If the claimant can perform her previous work, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering her residual functional capacity and age, education, and past

work experience.  20 C.F.R. § 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  *Meanel*, 172 F.3d at 1113.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1. Did the ALJ deprive Plaintiff of due process in reopening and reversing the prior finding of disability?
2. Did the ALJ erroneously discount Plaintiff's subjective complaints?
3. Did the ALJ erroneously assess the medical source opinions?

### *Due Process and the Decision to Reopen*

Plaintiff argues that the ALJ lacked the authority to reopen the initial determination, regarding Plaintiff's subsequent SSI application, that Plaintiff was disabled as of September 19, 2018.  ECF No. 15 at 4 (citing AR 1323–40).  Plaintiff

1    maintains that by depriving her of disability benefits that she was properly awarded,

2    the ALJ "violated her Constitutional right to due process." *Id.*  Plaintiff maintains

3    that the ALJ erred in identifying the issue of reopening the disability finding "more

4    than two years after [Plaintiff] was found disabled on April 17, 2019," when he

5    "could have done so at any point after the Appeals Council's December 18, 2019

6    administrative remand order implementing this Court's remand order." *Id.* at 5.

7    Plaintiff reports that she disagrees with the ALJ's position that the Appeals Council

8    "identified" the issue of reopening in its December 18, 2019 remand order and

9    counters that the remand order merely "instructed the ALJ to [reopen] only if the

10   requirements of 20 C.F.R. § 416.1487 and § 416.1488 were met." *Id.* at 6.

11         The Commissioner responds that the ALJ's decision to reopen a subsequent

12   decision for disability benefits is purely discretionary and not reviewable by the

13   district court, with an exception for colorable constitutional claims.  ECF No. 18 at

14   2–3 (citing AR 1186–87; *Taylor v. Heckler*, 765 F.3d 872, 877 (9th Cir. 1985);

15   *Califano v. Sanders*, 430 U.S. 99, 107–09 (1977); *Udd v. Massanari*, 245 F.3d 1096,

16   1098–99 (9th Cir. 2001); *Klemm v. Astrue*, 543 F.3d 1139, 1144–45 (9th Cir. 2008)).

17   The Commissioner goes on to argue that Plaintiff does not raise a constitutional

18   claim because she does not cite any authority supporting that deciding to reopen an

19   award of benefits more than two years after benefits were awarded was a due

20   process violation.  *Id.* at 3 (citing ECF No. 15 at 4–6).  Moreover, the Commissioner

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 12

argues that Plaintiff had notice of the possibility that her subsequent application might be reopened in the Appeals Council's remand order, through a written discussion between Plaintiff's attorney and the ALJ prior to the hearing, and at the hearing on November 10, 2021. *Id.* at 4 (citing AR 1234–38, 1266, 1271–74, 1321, 1657–58).  The Commissioner summarizes: "[Plaintiff] does not explain what additional process she believes was due, and disagreeing with the merits of that discretionary decision does not amount to a colorable constitutional claim.  Thus, [Plaintiff] has not shown that this decision is reviewable."  *Id.*

As a general matter, the Commissioner's decision to reopen a claim is purely discretionary, and, therefore, not reviewable by a district court.  *See Davis v. Schweiker*, 665 F.2d 934, 935 (9th Cir. 1982); *Klemm*, 543 F.3d at 1144.  A recognized exception to this rule exists where plaintiff raises a "colorable constitutional claim of due process violation that implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination."  *Udd*, 245 F.3d at 1099; *Califano*, 430 U.S. at 107–09; *Klemm*, 543 F.3d at 1144.

Section 404.1488 grants the Commissioner discretion to reopen final decisions.  20 C.F.R. § 404.1488 (a determination "may" be reopened pursuant to subsections therein if the relevant criteria are satisfied); *see also Taylor v. Heckler*, 765 F.2d 872, 877 (9th Cir. 1985) (the Commissioner's decision to reopen a claim is

purely discretionary after an administrative decision becomes final). A prior application may be reopened within twelve months of the date of the notice of the initial determination for any reason and within two years of the initial determination upon a showing of "good cause." 20 C.F.R. §§ 404.1488, 404.1489(a). Good cause exists when "new and material evidence is furnished." 20 C.F.R. § 404.989(a)(1).

Internal agency guidance for ALJs instructs that, "[i]n determining whether the conditions for reopening and revising a final determination or administrative law judge (ALJ) decision are met, the ALJ will compute the time between . . . [t]he date of the notice of the initial determination on the application the ALJ is considering reopening; and . . . the date the Social Security Administration takes action to reopen the determination or decision." SSA HALLEX § I-2-9-20. The Hallex manual provides the following illustrative example: "If the ALJ is the first person to identify the reopening issue, and he or she would like to reopen on his or her own initiative, the ALJ computes the time period for reopening from the date he or she identified the issue." SSA HALLEX § I-2-9-20.

While Plaintiff's appeal of the denial of her August 24, 2017 SSI claim ("2017 claim") was pending, Plaintiff filed another SSI claim ("2018 claim"), which was granted through a favorable initial determination issued by DDS on April 17, 2019. AR 1323–39. Following remand from this Court, the Appeals Council issued an order remanding Plaintiff's 2017 SSI claim ("Order remanding the 2017 claim") to

an ALJ for resolution of the issues identified at the district court level.  AR 1320–21.

The Order remanding the 2017 claim was issued on December 18, 2019, and

acknowledged as follows:

> The claimant filed a subsequent claim for Title XVI disability benefits
> on December 18, 2018. The State agency found the claimant disabled
> as of September 19, 2018. The Appeals Council neither affirms nor
> reopens the determination, which continues to be binding. This means
> that the decision will be subject to reopening and revision if additional
> development indicates that the conditions for reopening are met. Unless
> the determination is reopened and revised in accordance with
> applicable regulations, the period before the Administrative Law Judge
> will be limited to that period prior to September 19, 2018.

AR 1321 (internal citation to 20 C.F.R. § 416.1487 omitted).

At the hearing on November 10, 2021, ALJ Shumway heard argument from

Plaintiff's counsel regarding the issue of reopening Plaintiff's December 2018 claim.

AR 1234–38.  The ALJ also continued the hearing to receive briefing from Plaintiff

on the subject.  When the ALJ reconvened the telephonic hearing on March 14,

2022, ALJ Shumway informed Plaintiff and her attorney that, having considered the

issue, he anticipated reopening Plaintiff's 2018 claim.  AR 1269–72.  Plaintiff's

counsel had an additional opportunity to ask the ALJ about the basis for his

anticipated decision and to make comments for the record.  AR 1272–73.

As recited above, for the Court to have jurisdiction to review a discretionary

decision by the Commissioner, Plaintiff must raise a colorable constitutional claim.

*See Udd*, 245 F.3d at 1099.  "[D]ue process is flexible and calls for such procedural

1  protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471,

2  481 (1972).  The touchstones of due process are notice and opportunity to be heard.

3  *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).

4        Plaintiff asserts that "the ALJ identified the issue of reopening for the first

5  time at the November 10, 2021 hearing, more than two years after [Plaintiff] was

6  found disabled on April 17, 2019."  ECF No. 15 at 5 (citing AR 1234–38).  To the

7  contrary, the Appeals Council gave Plaintiff notice of the reopening issue on

8  December 18, 2019, within twelve months of the DDS initial determination issued

9  on April 17, 2019.  AR 1321, 1323–39.  Moreover, even if Plaintiff had

10 demonstrated that the ALJ disregarded the regulations by reopening Plaintiff's 2018

11 claim outside of the time allowed, Plaintiff has not argued that her ability to present

12 evidence or argument was impeded, or that she was otherwise deprived of a

13 meaningful opportunity to be heard.  *See* ECF No. 15.  Indeed, it is undisputed that

14 Plaintiff had multiple opportunities to be heard on the reopening issue before the

15 ALJ reopened Plaintiff's 2018 claim on March 22, 2022.  AR 1185–98; 1234–38;

16 1269–73.  Therefore, the Court finds that Plaintiff has not raised a colorable

17 constitutional claim, and the Court has no jurisdiction to review the Commissioner's

18 discretionary decision to reopen Plaintiff's 2018 claim.

19 / / /

20 / / /

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 16

***Subjective Complaints***

Plaintiff argues that the ALJ erroneously rejected Plaintiff's testimony about shortness of breath because of a lack of objective supporting evidence and normal pulmonary function tests ("PFTs").  ECF No. 15 at 7 (citing AR 1192).  Plaintiff maintains that she produced medical evidence of an underlying impairment, so the ALJ could not discredit her testimony merely because it is unsupported by objective evidence.  *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  Plaintiff adds, "More importantly, the ALJ's finding disregards the testimony of the medical expert (ME), Dr. Smiley, that PFT's [sic] are usually normal in people with interstitial lung disease (ILD)."  *Id.* (citing AR 149).  Plaintiff argues that the ALJ also errs in focusing on the PFTS while overlooking objective findings of breathing problems.  *Id.* at 8 (citing AR 2315, 2321–22, 2326, 2341).

Plaintiff further argues that the ALJ erred in rejecting Plaintiff's allegations of back pain based on record evidence that Plaintiff's degenerative disc disease was classified as mild to moderate and that Plaintiff demonstrated normal gait, full strength, normal sensation, and normal reflexes, without explaining how those findings undermine Plaintiff's pain testimony.  ECF No. 15 at 9.  Plaintiff also faults the ALJ for "fail[ing] to take into account the connection between [Plaintiff's] physical and mental impairments, which goes to the heart of this case."  *Id.*  Plaintiff contends that "numerous medical sources" corroborated Plaintiff's claim that she

1  becomes anxious when she has difficulty breathing, which in turn worsens her

2  breathing and that Plaintiff's anxiety heightens her chronic pain levels." *Id.* at 9–10

3  (citing AR 1241–42). Lastly, Plaintiff argues that the ALJ did not rely on substantial

4  evidence in concluding that she was deliberately exaggerating her symptoms due to

5  Plaintiff's representation that her condition is "terminal" while a treatment note

6  contradicts that conclusion. *Id.* at 10–11. Plaintiff submits that interstitial lung

7  disease is fatal and that it was "unreasonable for the ALJ to interpret [Plaintiff's]

8  comments as disingenuous if <u>she</u> believed them to be true." *Id.* at 11 (emphasis in

9  original).

10        The Commissioner argues that the ALJ was permitted to consider evidence of

11  drug-seeking behavior in weighing Plaintiff's statements about the severity of her

12  symptoms. ECF No. 18 at 5 (citing AR 1193; *Edlund v. Massanari*, 253 F.3d 1152,

13  1157–58 (9th Cir. 2001)). The Commissioner asserts that the ALJ reasonably

14  concluded that Plaintiff's going to the emergency department seeking narcotics and

15  misusing narcotics that were prescribed to her "undermined the notion that

16  [Plaintiff's] complaints were evidence of a somatic disorder or that her claims of

17  debilitating pain were genuine." *Id.* at 6 (citing AR 784, 789, 1139, 1193, 2812–15,

18  2727). The Commissioner also argues that the ALJ reasonably found evidence that

19  Plaintiff presented in no acute distress to be inconsistent with Plaintiff's allegations

20  of debilitating pain. *Id.* at 6–7 (citing *Rollins v. Massanari*, 261 F.3d 853, 856–57

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 18

(9th Cir. 2001); *Dattilo v. Berryhill*, 773 F. App'x 878, 881 (9th Cir. 2019); AR

1121–22, 1125–26, 2521).

In deciding whether to accept a claimant's subjective pain or symptom

testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d

1273, 1281 (9th Cir. 1996). First, the ALJ must evaluate "whether the claimant has

presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'"

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there

is no evidence of malingering, "the ALJ can reject the claimant's testimony about

the severity of [his] symptoms only by offering specific, clear and convincing

reasons for doing so." *Smolen*, 80 F.3d at 1281.

There is no allegation of malingering in this case. Plaintiff did not testify at

the hearings on remand, but Plaintiff alleged as follows elsewhere in the record, as

summarized in the ALJ's decision:

> The claimant alleges disability because of respiratory bronchial
> interstitial lung disease and coronary artery disease. She alleges her
> impairments limit her ability to walk, talk, climb stairs and concentrate.
> In the Disability Appeals Report dated February 23, 2018, the claimant
> reported that her doctor told her she is terminal and has a year left to
> live ("I've been directed to make final decisions in my life I'm
> terminal"; "I'm terminal with a year left per doctor"). She stated she is
> unable to walk more than 20 feet without needing oxygen. At the first
> hearing in September 2018, the claimant stated that her pulmonologist,

Dr. Patel, told her she is dying. She testified that no doctor has suggested her primary problem may be psychiatric.

AR 1191 (citing AR 346–50, 359–66, 370, 374–75).

The ALJ found that the record provided "abundant reasons to doubt the veracity of the claimant's complaints, including objective findings of no distress even when reporting high pain levels, very limited regular treatment, drug-seeking behavior, and clear inconsistency between what she claimed at the first hearing that her pulmonologist told her and what the medical records show he told her." AR at 1192. With respect to Plaintiff's claim of disabling mental health treatment, the ALJ agreed with Plaintiff that the record supported finding a severe impairment in the form of anxiety disorder but found that Plaintiff's failure to seek mental health treatment undermines the degree of impairment that she alleges. AR 1192. The ALJ further reasoned that Plaintiff's "high-functioning activities of daily living also seem to have continued" and that Plaintiff "has continued to be discrepant in her reporting." AR 1193.

In finding Plaintiff to be less debilitated by anxiety than she claimed, the ALJ relied on evidence that Plaintiff has not sought any ongoing mental health treatment. AR 1192. The records cited by the ALJ indicate that Plaintiff acknowledged that she had presented at the emergency room with physical symptoms that "were due in large part to anxiety," yet Plaintiff cancelled or did not show up at several of the limited counseling appointments in the record. AR 1753–54, 2749. There is no

1  error in an ALJ's reliance on "unexplained or inadequately explained failure to seek

2  treatment or to follow a prescribed course of treatment."  *Molina v. Astru*e, 674 F.3d

3  1104, 1113 (9th Cir. 2012) (internal quotation omitted).

4       Likewise, the ALJ cited substantial evidence in discounting Plaintiff's

5  complaints based on presenting in no acute distress at the same appointments where

6  she reported debilitating pain and based on drug-seeking behavior.  For instance, the

7  ALJ cited treatment records indicating that Plaintiff presented at treatment

8  appointments for both physical and mental symptoms in no acute distress,

9  sometimes even while reporting that her current pain level was 10/10.  *See* AR

10  1121–22, 1134, 2727, 2760.  In 2017, Plaintiff presented at an emergency

11  department reporting chest pain; however, she refused non-narcotic pain

12  medications, complained that hospital staff "do not seem to care" because they did

13  not order any pain medication for her, and ultimately decided to leave against

14  medical advice.  AR 784–89.  Similarly, in 2021, Plaintiff sought care at an

15  emergency department for abdominal pain but presented in no acute distress and left

16  the facility against medical advice when she was "not immediately being treated

17  with a narcotic."  AR 2812–15.  Moreover, at a medical appointment in October

18  2021, the provider noted that she had queried Washington State's Prescription

19  Monitoring Program website and found that Plaintiff had gotten prescriptions for

20  hydrocodone, morphine, alprazolam, and oxycodone from four different providers

21

within a 30-day period.  AR 2722, 2727.  Evidence of Plaintiff's drug-seeking and frequent presentation "in no acute distress" were clear and convincing reasons for discounting her pain and symptom statements regarding her alleged physical impairments.  *See Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("Because there is substantial evidence of drug-seeking behavior despite these observations of Coleman's pain-free behavior, the ALJ provided a clear and convincing reason to discount Coleman's testimony.").  The Court finds no error on this ground.

### *Medical Source Opinions*

Plaintiff argues that the ALJ erroneously evaluated medical source opinions from: (1) medical expert Robert Smiley, MD; (2) treating physician Jeremy Stevens, DO; (3) treating physician's assistant, Karla Rivera, PA-C; (4) examining psychologist Michael Clark, PhD; and (5) medical expert Laura Hopper, MD.  ECF No. 15 at 15–24.

The Commissioner defends the ALJ's treatment of the medical source opinions and argues that Plaintiff incorrectly "attempts to rely on caselaw that pertain [sic] to the prior regulatory scheme."  ECF No. 18 at 10–15.

The regulations that took effect on March 27, 2017, provide a new framework for the ALJ's consideration of medical opinion evidence and require the ALJ to articulate how persuasive she finds all medical opinions in the record, without any hierarchy of weight afforded to different medical sources.  *See* Rules Regarding the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 22

Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Instead, for each source of a medical opinion, the ALJ must consider several factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors such as the source's familiarity with other evidence in the claim or an understanding of Social Security's disability program.  20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the "most important" factors, and the ALJ must articulate how she considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(b)(2).  With respect to these two factors, the regulations provide that an opinion is more persuasive in relation to how "relevant the objective medical evidence and supporting explanations presented" and how "consistent" with evidence from other sources the medical opinion is.  20 C.F.R. § 404.1520c(c)(1). The ALJ may explain how he considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record.  20 C.F.R. § 404.1520c(b)(2), (3).  Courts also must continue to consider whether the ALJ's finding is supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Prior to revision of the regulations, the Ninth Circuit required an ALJ to provide clear and convincing reasons to reject an uncontradicted treating or examining physician's opinion and provide specific and legitimate reasons where the record contains a contradictory opinion. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). However, the Ninth Circuit has held that the Social Security regulations revised in March 2017 are "clearly irreconcilable with [past Ninth Circuit] caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, No. 21-35458, 2022 U.S. App. LEXIS 10977, at *14 (9th Cir. Apr. 22, 2022). The Ninth Circuit continued that the "requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, is likewise incompatible with the revised regulations." *Id*. at *15 (internal citation omitted).

Accordingly, as Plaintiff's claim was filed after the new regulations took effect, the Court refers to the standard and considerations set forth by the revised rules for evaluating medical evidence. *See* AR 323, 1185, 1482.

### **Dr. Smiley**

Plaintiff argues that the ALJ erroneously substituted his own judgment for that of Dr. Smiley, who testified at the 2018 hearing. ECF No. 15 at 17. Plaintiff further argues that the ALJ erred to the extent that he rejected Dr. Smiley's opinion for

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 24

relying on Plaintiff's self-report because Dr. Smiley did not discredit Plaintiff's subjective complaints, and those complaints supported Dr. Smiley's ultimate opinion. *Id*. at 17–18 (citing *Ryan v. Commissioner*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008)).

The Commissioner responds that, in response to the ALJ's questions, Dr. Smiley testified that the objective evidence supported light, rather than sedentary, exertion, and that there was no objective evidence suggesting that Plaintiff would be unable to work four days per month. ECF No. 18 at 11.

Dr. Smiley testified at the 2018 hearing that the objective record supported that Plaintiff has bronchiolitis with interstitial lung disease but not that she has chronic obstructive pulmonary disorder. AR 1484, 1486. Dr. Smiley assessed Plaintiff as capable of only sedentary work, although he acknowledged that the objective evidence supported an assessment of light work. AR 1491–92.

ALJ Shumway found that Dr. Smiley's opinion was "partially persuasive, to the extent that it is supported by the objective physiological evidence, as expressed by physical examinations, pulmonary function testing, and the exercise test discussed [earlier in the ALJ's decision]." AR 1195. ALJ Shumway reasoned that he had found "ample reason" to discount Plaintiff's symptoms and, therefore, discounted Dr. Smiley's opinion that Plaintiff was limited to sedentary work because it was based only on Plaintiff's reported symptoms. AR 1195.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 25

Dr. Smiley's own testimony supports that he did not rely on any objective evidence in opining that Plaintiff was limited to sedentary work or would miss four or more workdays per month, and the Court already found that the ALJ relied in substantial evidence in discounting Plaintiff's subjective complaints, which formed the basis for Dr. Smiley's opinion. *See* AR 1491–92. Therefore, the ALJ's supportability finding is supported by substantial evidence, and the Court finds no error in the ALJ's evaluation of Dr. Smiley's opinion.

**Dr. Stevens**

Plaintiff argues that the ALJ could not reject Dr. Stevens's opinion solely because it was in checkbox form. ECF No. 15 at 18. Plaintiff further asserts that the ALJ erred in reasoning that objective evidence, including the PFTs, does not support Dr. Stevens because Dr. Smiley testified that PFTs were normal in patients with ILD. *Id.* at 18–19.

The Commissioner argues that the ALJ reasonably found that Dr. Stevens inadequately explained his opinion that Plaintiff would need to lay down five hours per day, where Dr. Stevens wrote only "due to shortness of breath" as an explanation. ECF No. 18 at 12 (citing AR 1086). The Commissioner further contends that the ALJ properly evaluated the supportability of Dr. Stevens' opinion in finding that the degree of limitation that Dr. Stevens assessed was not supported by the contemporaneous treatment notes. *Id.* (citing AR 1106, 1193).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 26

Dr. Stevens opined on July 20, 2018, that Plaintiff would be likely to miss four or more days per month due to shortness of breath and back pain.  AR 1087.  Dr. Stevens also opined that Plaintiff is able to perform only sedentary work.  AR 1087.

ALJ Shumway found Dr. Stevens' opinion "unpersuasive."  AR 1193.  The ALJ reasoned that "[t]his is a checkbox form with little explanation, and it is not supported by Dr. Stevens' treatment notes."  AR 1193.

A review of the record confirms that the contemporaneous treatment notes do not support Dr. Stevens' opinion.  As the Commissioner discusses, Plaintiff reported to Dr. Stevens shortness of breath on the same day that Dr. Stevens completed the check-box opinion form.  AR 1106; *see* ECF No. 18 at 12–13.  However, Plaintiff was running out of her inhaler medication at the time and was not taking that medication as directed.  AR 1106.  Therefore, Dr. Stevens acknowledged, "Since this is the first time I'm seeing this patient I don't know if this shortness of breath is her baseline, and exacerbation due to her reduced Breo usage or unlikely a[n] evolving pneumonia."  AR 1106.  Dr. Stevens posited, "I think her shortness of breath is likely due to under utilization [sic] of her medication and anticipate that she will return to baseline within the week."  AR 1106.  Given Dr. Stevens' own conclusion that Plaintiff's reported breathing issue was of temporary duration, and Dr. Stevens' acknowledgement that he was not aware of Plaintiff's baseline, the ALJ

1  relied on substantial evidence in finding that the medical record does not support Dr.

2  Stevens' opinion about Plaintiff's long-term functioning.  Moreover, Dr. Stevens'

3  opinion that Plaintiff's shortness of breath is "chronic, non-resolving" is not

4  supported by Dr. Stevens' treatment notes.  *Compare* AR 1086 *with* AR 1106.

5      The Court does not find error in the ALJ's assessment of Dr. Stevens'

6  opinion.

7              **Ms. Rivera**

8      Plaintiff argues that the ALJ could not reject Ms. Rivera's opinion solely

9  because it was in checkbox form.  ECF No. 15 at 19.  Plaintiff further maintains that

10 the ALJ incorrectly found that Ms. Rivera failed to provide any meaningful

11 explanation for her opinion.  *Id.* at 19–20.

12     The Commissioner responds that Ms. Rivera did not explain why Plaintiff was

13 unable to walk, lift, carry, handle, push, pull, reach, stoop, and crouch due to

14 interstitial lung disease and shortness of breath.  ECF No. 18 at 14.  The

15 Commissioner adds that in addition to Ms. Rivera's opinion not being well

16 supported, the opinion was inconsistent with pulmonary specialist Bridget Collins,

17 MD's assessment and the results of the exercise study.  *Id.* (citing AR 856–57,

18 1194).

19     Ms. Rivera completed a Washington State Department of Social and Health

20 Services ("DSHS") physical functional evaluation form for Plaintiff on December

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 28

21, 2017.  AR 979–81.  Ms. Rivera opined that due to interstitial lung disease, Plaintiff is permanently "severely limited," meaning that she is unable even to meet the demands of sedentary work.  AR 981.  Ms. Rivera did not explain the limitation and recommended by way of treatment only: "continue with current inhalers" and "avoid secondhand tobacco exposure/dust."  AR 979–81.

The ALJ found Ms. Rivera's opinion to be unpersuasive, reasoning that it is "made on a checkbox form with no meaningful explanation and is contradicted by a specialist opinion."  AR 1194.  The ALJ further reasoned that Ms. Rivera's "opinion is inconsistent with the remaining medical evidence of record —specifically with the spirometry testing, physical exams, and the exercise test" conducted by Dr. Collins.  AR 1194.

Substantial evidence supports that Ms. Rivera's opinion lacks an explanation for selecting the most restrictive exertion level.  AR 979–81.  In addition, the record supports that Ms. Rivera recorded unremarkable findings in her examination of Plaintiff, with respect to Plaintiff's lungs.  AR 136 ("Lungs: Respiratory effort: no dyspnea.  Auscultation: no wheezing, rales/crackles, or rhonchi and breath sounds normal, good air movement, and [clear] except as noted.").  Furthermore, Ms. Rivera's opinion is inconsistent with the assessment of pulmonary specialist Dr. Collins, who noted that in an exercise study in September 2017, Plaintiff walked "1417 feet in 6 minutes with a low of 99% on room air."  AR 856.  Based on these

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 29

results, Dr. Collins did not consider Plaintiff to be disabled based on her lungs.  AR 857.  As supportability and consistency are the most important factors in evaluating medical opinion evidence, the ALJ's reliance on these factors to discount Ms. Rivera's opinion is reasonable and does not demonstrate any error.  *See* 20 C.F.R. § 416.920c(b).

### Dr. Clark

Plaintiff argues that the ALJ erred in rejecting Dr. Clark's opinion because Plaintiff's presentation for her examination by Dr. Clark was "dramatically different" from her presentation to treatment providers in the areas of memory and concentration.  ECF No. 15 at 20.  Plaintiff argues that the ALJ cited only brief observations made by medical providers who were treating Plaintiff for physical impairments while Dr. Clark based his opinion on an actual psychological examination.  *Id.* at 20–21 (citing AR 815, 829, 845–46).

The Commissioner responds that the ALJ relied on treatment notes showing normal memory, attention, concentration, and mood, and no acute distress, in reasoning that "'[g]iven the severity observed by Dr. Clark in his consultative evaluation for the purpose of determining disability,' the ALJ 'would expect to see the same level of symptomatology present in the treatment record.'"  ECF No 18 at 15 (citing AR 808, 987, 1122, 1194, 1684, 2286, 2529, 2589).

1      Dr. Clark conducted a consultative evaluation of Plaintiff on January 13,

2   2018.  AR 1058.  Dr. Clark opined that Plaintiff likely would have difficulty:

3   performing detailed and complex tasks; interacting with coworkers and the public

4   beyond a "very short-term basis"; and dealing with the usual stress encountered in

5   the workplace.  AR 1062–63.  Dr. Clark based his opinion that Plaintiff would have

6   difficulty performing detailed and complex tasks on her "problems with memory and

7   difficulty staying on task during the exam."  AR 1062.

8      The ALJ found Dr. Clark's opinion "unpersuasive" because Dr. Clark

9   observed Plaintiff "during a one-time exam at which the claimant's presentation was

10  dramatically different from her presentation . . . to treatment providers."  AR 1194.

11  The ALJ cited treatment records in which Plaintiff presented consistently with

12  normal recent and remote memory, no deficits in concentration or difficulties with

13  distractibility, and an ability to answer questions appropriately, follow commands

14  appropriately, and speak in full sentences.  AR 1194.  The ALJ summarizes, "Given

15  the severity observed by Dr. Clark in his consultative evaluation for purpose of

16  determining disability, I would expect to see the same level of symptomology

17  present in the treatment record.  Dr. Clark's opinion is also inconsistent with the

18  claimant's lack of mental health treated as discussed above."  AR 1194.

19     The ALJ's cites to Plaintiff's unremarkable presentation at numerous

20  appointments amount to substantial support for the ALJ's interpretation of the

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 31

record.  Moreover, as discussed with respect to other medical sources above, the ALJ appropriately considered whether the objective medical evidence and supporting explanations provided by Dr. Clark support his opinion and whether Dr. Clark's opinion is consistent with evidence from other sources in determining how persuasive Dr. Clark's findings were.  Therefore, the Court finds no error in the ALJ's treatment of Dr. Clark's opinion.

### Dr. Hopper

Plaintiff argues that the ALJ mischaracterized Dr. Hopper's opinion regarding the effect of evidence of drug-seeking behavior and exaggeration of symptoms on the degree to which Plaintiff has limitations due to anxiety.  ECF No. 15 at 22. Plaintiff asserts that Dr. Hopper merely responded in the affirmative to the ALJ's question as to whether the alternative explanation that Plaintiff is "perseverating on her physical issues" and "going to the ER a lot in order to treat physical issues that maybe don't have clear physiological basis" is that Plaintiff is seeking narcotics and/or exaggerating her symptoms.  *Id.* (citing AR 1251).  Plaintiff continues that Dr. Hopper responded conditionally to the ALJ's question about whether Dr. Hopper would still find marked limitation in the B criteria after considering the alleged drug-seeking and exaggeration, as follows:

> I think that still, it still appears as though the ability to adapt is, I would still indicate is probably markedly impaired because she does not appear to possess the coping skills to manage what's going on with her life whether it's physical or psychological or a combination of both. But

1
2
     if these symptoms only seem to be appearing right in front a treating
     provider then that would suggest that she probably does have a less
     impaired ability to concentrate, persist or maintain pace.

3   *Id.* at 23 (citing AR 1252–53).  Plaintiff further argues that Dr. Hopper's agreement

4   that Plaintiff's absences "might result from 'a perception of symptoms that did not

5   match reality'" does not undermine Dr. Hopper's opinion.  *Id.* at 23 (asserting that

6   "[t]his answer does not undermine her opinion since symptoms that are legitimately

7   perceived can serve as a basis for a finding of disability.").  Plaintiff summarizes,

8   "The ALJ's rejection of Dr. Hopper's opinion hinges on his own belief that

9   [Plaintiff] was exaggerating her symptoms and engaging in drug seeking behavior—

10  a belief that is not supported by substantial evidence."  *Id.* at 23–24.  Plaintiff adds

11  that the ALJ's claim that he "convinced" Dr. Hopper to change her opinion based on

12  his "cross examination" shows that the ALJ exceeded his role in this non-adversarial

13  proceeding.  *Id.* at 24 (no citation to record).

14       The Commissioner responds that the ALJ found Dr. Hopper's opinion

15  somewhat persuasive, and the RFC that the ALJ formulated accounted for almost all

16  of the functional limitations that Dr. Hopper described.  ECF No. 18 at 16–17.  The

17  Commissioner argues that the ALJ reasonably determined that Plaintiff likely would

18  miss one day of work per month and rejected Dr. Hopper's opinion that Plaintiff

19  would miss two days per month.  *Id.* at 17 (citing AR 1195, 1260–61).

20
21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 33

Dr. Hopper testified that Plaintiff meets the listing for anxiety and is limited to simple, routine, repetitive tasks without significant interaction with the public, coworkers, or supervisors in a routine, stable work environment and would likely miss two or more days of work per month due to anxiety.  AR 1243–44, 1253, 1259–61.

The ALJ found Dr. Hopper's opinion to be "somewhat persuasive" and found as follows:

> I find the opinion of Laura Hopper, Ph.D., the psychological medical expert at the post-remand hearing, to be somewhat persuasive. Dr. Hopper reviewed the entire longitudinal medical record, gave a thorough explanation of her opinion, and was subject to cross-examination, and her opinion is consistent with the longitudinal record. I recognize that Dr. Hopper initially rated concentration/persistence/ pace as marked and suggested the claimant may equal a listing, but on cross-examination, she recognized that specific evidence of the claimant's drug-seeking behavior and exaggeration undercut the idea of a marked limitation in this area. I agree with her ultimate conclusion that a moderate limitation is more consistent with the record. I also recognize that Dr. Hopper opined the claimant would likely miss two days of work per month for various reasons, but she acknowledged that some of these reasons would be physical impairments as well as the claimant's unrealistic perceptions of her impairment. She could not state that the claimant's psychological pathology itself would cause these absences. I agree that the claimant likely would miss work, but not because of her medically-determinable impairments. Thus, my ultimate finding does not fully credit Dr. Hopper's opinion but is not necessarily inconsistent with it. I find one absence per month to be more consistent with the record as a whole.

AR 1195–96.

As referred to in the ALJ's decision, Dr. Hopper acknowledged that her opinion that Plaintiff would miss two days of work per month contemplated that Plaintiff would be missing work for reasons other than her psychiatric conditions. AR 1260.  However, it is undisputed that Dr. Hopper lacks expertise regarding Plaintiff's physical conditions, and a medical source's specialization is one of the factors for the ALJ to consider under the revised framework.  20 C.F.R. § 404.1520c(c)(1)-(5).  Accordingly, the ALJ's explanation for why he partially discounted Dr. Hopper's opinion demonstrates that he relied on substantial evidence and considered the relevant factors in assessing Dr. Hopper's opinion. The Court finds no error in the ALJ's evaluation of the last of the challenged medical source opinions.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2.  Defendant's Brief, **ECF No. 18**, is **GRANTED**.

4.  Judgment shall be entered for Defendant.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 35

1      **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

2  Order, enter judgment as directed, provide copies to counsel, and **close the file** in

3  this case.

4      **DATED** May 4, 2023.

5

6                                    _s/ Rosanna Malouf Peterson_
                                  ROSANNA MALOUF PETERSON
                                  Senior United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21